MARSHALL WELLS COMPANY, Respondent, v. PETER REGAN, Appellant.

(180 N. W. 54.)

**Appeal and error — party conceding there was one issue for jury cannot on appeal assert there were others.**

1. Where at the close of the trial a party informs the trial court that there is only one issue of fact to submit to the jury, he cannot be heard to say on appeal that there were other questions of fact which should have been submitted.

**Contracts — finding that there was no conflict on the issue for the jury raised by defendant held proper.**

2. For reasons stated in the opinion it is *held* that the trial court properly held that there was no substantial conflict in the evidence on what was conceded to be the only possible issue of fact in the case.

Opinion filed November 3, 1920.

From a judgment of the district court of Ramsey County, *Kneeshaw*, J., defendant appeals.

Affirmed.

*Palda & Aaker* and *H. S. Blood*, for appellant.

*Cuthbert, Smythe, & Wheeler*, and *Middaugh & Cuthbert*, for respondent.

"Where an absolute and unqualified admission is made in a pending cause, whether by written stipulation of the attorney or as a matter of proof on the hearing, it cannot be retracted on a subsequent trial, unless by leave of court." 20 Century Dig. § 1035, and general admissions.

"Statements of plaintiff in the trial of an action between him and another defendant, involving the same matters as in the pending case, are competent to sustain defendant's contention." 20 Century Dig. 1071, § 739; Mercer v. King, 13 Ky. L. Rep. 429; Union Mut. L. Ins. Co. v. Masten, 3 Fed. 885.

"Express admissions *in judicio* stand as conclusive presumptions of law (1 Greenl. Ev. § 27) and cannot be disputed unless it is first shown that they were made by mistake." Holley v. Young, 68 Me. 215, 28 Am. Rep. 40; California Electrical Works v. Finch, 47 Fed. 583.

PER CURIAM. Plaintiff brought this action to recover upon a contract for the installation of a heating plant in the house of the defendant situated in the city of Devils Lake in this state, and recovered a verdict in the sum of $991.43 with interest. Judgment was entered pursuant to the verdict and the defendant has appealed from the judgment. The evidence shows that on or about March 12, 1918, the plaintiff through its agent, Johnson, and a special sales agent, entered into an agreement with the defendant to sell the defendant a hot-water heating plant and install the same in his residence in the city of Devils Lake, for the agreed price of $800. The defendant, Regan, admits that such arrangement was made. There is, however, a conflict as to the terms of the agreement. Regan claims that he stated that he desired a boiler with a fire box of the same size as the one in the United States Weather Bureau in the city of Devils Lake. It is admitted that the parties went down to the weather bureau and examined this boiler. Both representatives for the plaintiff admitted that the defendant

stated that he wanted a boiler with a fire box of the same size as the boiler in the weather bureau, but that they informed him that this boiler would be too large for his house and would not be economical and that they suggested to him that all he wanted would be a boiler of sufficient capacity to heat his house to a temperature of at least 70° in the coldest weather; that thereafter a certain memorandum or agreement was drawn up which, at defendant's request, was submitted to his attorney. The attorney, raised some question as to whether the sales agents had power to bind the company with respect to the matter in question and suggested that the proposition be submitted to the company to the end that there might be a ratification of the contract by the company direct. Thereafter the plaintiff wrote a letter to the defendant accepting the order and guaranteeing that the heating plant would heat his house in the coldest weather to a temperature of 70°. The plaintiff company thereupon proceeded to ship the material including the boiler and have the plant installed. The defendant admits that he saw the boiler at the depot, and also later while it was being installed. After the plant had been completely installed, with the single exception of inserting the glass tube in the water gauge, the defendant made complaint that the boiler did not have a fire box as large as that in the weather bureau and refused to accept or pay for the plant. The plaintiff, thereupon, sent another representative to see the defendant and endeavored to adjust the matter with him with the result that it was agreed that plaintiff should send him a boiler with a fire box of the desired size. After this took place the defendant communicated with one Jillek, who was engaged in the plumbing and heating business in Devils Lake, with the result that he decided that he wanted Jillek to install the new boiler. The defendant saw the new boiler after it arrived at Devils Lake and expressed his satisfaction with it.

Later a conversation took place between Regan, Jillek, and the representatives of the plaintiff, at which it was arranged that Jillek should go ahead and install the new boiler and complete the job. Jillek, testified: "He (Regan), said, 'If they would employ me to put in his job and furnish me the necessary material that I asked for he would accept the job and pay for it.' I says, 'that if they give me these things I will take the responsibility and I will guarantee that

I will heat his house.' He, (Regan) said, 'if you give Jillek what he wants I know he will do me a good job and I will accept it and pay for it.' " A Mr. Locke, gives the following version of the conversation: "Mr. Regan, says, 'Mr. Jillek, if you will put in that plant I know it will be right and I will pay for it.' " Johnson who was present at the conversation gives this version. "Give Joe what he wants. He is a good man and whatever he says goes. You give him what he wants and he will guarantee the job." After this conversation took place, a written agreement was prepared which reads as follows: "Devils Lake, North Dakota, February 22, 1919. Marshall Wells Co., Duluth, Minn. Upon furnishing the extra radiation and fittings necessary as submitted by me I hereby certify and guarantee the equipment and parts for the Peter Regan heating plant to be complete in every respect. Signed by, Joe Jillek, Steamfitter, Devils Lake, N. D."

The defendant, Regan, and one Johnson signed the agreement as witnesses.

Jillek prepared a list of additional material and parts which he desired. They were all furnished by the plaintiff. Jillek commenced to install the new boiler, and some additional radiation which had been furnished by plaintiff. While the work was progressing the defendant came along, and forbade his continuing the work. The plaintiff sought to obtain permission to remove the first boiler, but defendant refused to permit it to remove it except upon payment of damages.

The defendant refused to permit Jillek to finish the work. He also refused to pay the plaintiff, or even permit it to remove any of its material on the premises. The plaintiff thereupon brought this action for the price of the heating plant as agreed upon, viz., $800, and the value of the first boiler, viz., $191.43. The complaint is framed on the theory that after the first boiler had been installed there was a second contract between the parties under which the defendant agreed to pay the price first agreed upon, viz., $800, and return the first boiler, upon plaintiff's furnishing a new boiler and the additional parts specified by Jillek; that plaintiff performed all parts of the second agreement, and that plaintiff has broken such contract by failing to return the first boiler or pay the $800, to plaintiff's damage in the sum of $991.43.

At the close of all the testimony the plaintiff moved for a directed verdict. The record shows that after this motion was made the following colloquy took place between the trial court and defendant's counsel:

"The Court: Mr. Blood, what issue of fact is there for the jury to pass upon? What has the jury to pass upon here at all? What am I going to charge the jury? The only possible issue is that the second boiler was not as large as the one he was to get.

"Mr. Blood: That is the issue."

Plaintiff's counsel thereupon asked that the case be reopened for the purpose of making a motion to strike out the testimony of one Clementrude (who had been called and who had testified as a witness in behalf of the defendant with respect to the comparative sizes of the last boiler furnished to the defendant and the boiler in the weather bureau at Devils Lake). The case was reopened. Plaintiff's counsel thereupon moved that Clementrude's testimony on the matter of the size of the boiler be stricken out, "for the reason that on cross-examination, it was conclusively demonstrated that he had no knowledge of the subject himself and that his testimony on direct was purely hearsay, conjecture, and guess work." The court sustained the motion. Thereupon the court made the following statement to defendant's counsel: "If you can suggest anything for the jury to pass upon, Mr. Blood, I will instruct the jury." Defendant's counsel replied: "Our theory is that he did not get what he contracted for the second time, that the second boiler was not the size of the one in the weather bureau station." The court: "What is there to show that it was not? Mr. Clementrude testified that it was not, but he says that he does not know anything about it."

Hence, we have this situation as disclosed by the record: The defendant assumed, and in fact informed the trial court, that there was only one issue to submit to the jury, namely, whether the second boiler was of the agreed size. The trial court acted upon the question thus presented, and held, as a matter of law, that there was no conflict in the evidence as to the size of the second boiler, or rather that the evidence showed that the second boiler was of the agreed size. We have no hesitancy in holding that the trial court was correct in so ruling.

46 N. D.—9.

There was no substantial evidence, whatever, tending to show that the second boiler was not of the size agreed upon; and there was abundant testimony adduced by the plaintiff to the effect that it was. In these circumstances the defendant may not complain in this court that the trial court took him at his word and acted accordingly. 3 C. J. pp. 734, 860.

Defendant contends, however, that in as much as the evidence shows that he paid freight on the first boiler that he is entitled to have the judgment reduced in the sum so expended. While no foundation is laid in the pleadings for the recovery of such claim, plaintiff's counsel stated upon the oral argument that plaintiff was willing that such allowance be made. Hence the order and judgment of this court will be that the judgment appealed from be affirmed, but that plaintiff be allowed credit upon said judgment for the amount of freight paid by him upon the first boiler.